UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

HOME DESIGN SERVICES, INC.,

          Plaintiff,

vs.                              Case No.  2:06-cv-350-FtM-29DNF

DAVID  WEEKLEY  HOMES,  LLC,  RANDY
BRADEN,  WEEKLEY  HOMES,  L.P.,  ALANDA,
LTD.,  CINNAMON  DESIGN  &  DEVELOPMENT
INC.,  KIMBERLY  VOLZ,  HAYDEN  VOLZ,
HOWARD  BAUM,  and  COASTLAND  HOMES,
INC.,

          Defendants.

_____


**OPINION AND ORDER**


_____This  matter  comes  before  the  Court  on  defendant's  Renewed

Motion  for  Dismissal  and  Sanctions  Pursuant  to  FED. R. CIV. P. 11

(Doc. #134)  filed  on  June  12,  2007.   Plaintiff  filed  a  Response

(Doc. #141)  on  June  25,  2007.[1]   Also  before  the  Court  is

defendants'  David  Weekley  Homes,  LLC,  Randy  Braden,  Weekley  Homes,

L.P.,  Howard  Baum  and  CH  Customer  Service,  Inc.'s[2]  Motion  for

Summary  Judgment  (Doc. #136)  filed  on  June  15,  2007.   Plaintiff

filed  a  Response  (Doc. #153)  on  July  9,  2007.   Also  before  the

_____

[1]The  Court  notes  that  the  arguments  raised  in  defendants'
Renewed  Motion  for  Dismissal  (Doc. #134)  are  reiterated  in  their
Motion  for  Summary  Judgment  (Doc. #136).   The  Court  finds  that  the
issues  raised  are  better  addressed  under  FED. R. CIV. P. 56,  so  that
the  deposition  transcripts,  affidavits  and  expert  reports  filed  in
the  case  may  be  considered.   Therefore  defendants'  Renewed  Motion
for  Dismissal  (Doc. #134)  is  denied.

[2]The  Court  notes  that  Coastland  Homes,  Inc.  actually  refers  to
CH  Customer  Service,  Inc.   (See  Doc. #124.)

Court is defendant Alanda, Ltd.'s Motion for Summary Final Judgment (Doc. #201) filed on November 19, 2007, to which plaintiff filed a Response (Doc. #208) on January 22, 2008.  The Court notes that defendants Cinnamon Design & Development, Inc., Kimberly Volz and Hayden Volz have not filed motions for summary judgment.

Plaintiff Home Design Services, Inc. (Home Design or plaintiff) is a Florida-based architecture/design firm engaged in the business of designing homes.  Plaintiff alleges that it is the creator and original owner of an original architectural work of a single family residence entitled 89-102-2041 (the 2041).  The 2041 was created by plaintiff in or about 1989, and plaintiff has received two registrations relating to it from the United States Copyright Office.  In November of 2002, plaintiff received one registration of the 2041 as an "architectural design" and one registration as a "technical drawing."  Both registrations were amended in 2004.  Plaintiff alleges that subsequent to the registration of the 2041, all nine defendants copied, advertised, and constructed homes which infringed on the 2041 copyrights.

## I.

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  An issue is "genuine" if there is sufficient evidence such that a reasonable jury could return a

verdict for either party.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477
U.S. 242, 248 (1986).  A fact is "material" if it may affect the
outcome of the suit under governing law.  <u>Id.</u>  The moving party
bears the burden of identifying those portions of the pleadings,
depositions, answers to interrogatories, admissions, and/or
affidavits which it believes demonstrate the absence of a genuine
issue of material fact.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317,
323 (1986); <u>Hickson Corp. v. Northern Crossarm Co.</u>, 357 F.3d 1256,
1259-60 (11th Cir. 2004).

To avoid the entry of summary judgment, a party faced with a
properly supported summary judgment motion must come forward with
extrinsic evidence, i.e., affidavits, depositions, answers to
interrogatories, and/or admissions, which are sufficient to
establish the existence of the essential elements to that party's
case, and the elements on which that party will bear the burden of
proof at trial.  <u>Celotex Corp.</u>, 477 U.S. at 322; <u>Hilburn v. Murata
Elecs. N. Am., Inc.</u>, 181 F.3d 1220, 1225 (11th Cir. 1999).  If
there is a conflict in the evidence, the non-moving party's
evidence is to be believed and all reasonable inferences must be
drawn in favor of the non-moving party.  <u>Shotz v. City of
Plantation, Fl.</u>, 344 F.3d 1161, 1164 (11th Cir. 2003).

The Eleventh Circuit has noted that "summary judgment
historically has been withheld in copyright cases because courts
have been reluctant to make subjective determinations regarding the

similarity between two works." Herzog v. Castle Rock Entertainment, 193 F.3d 1241, 1247 (11th Cir. 1999). "However, non-infringement may be determined as a matter of law on a motion for summary judgment, either because the similarity between two works concerns only non-copyrightable elements of the plaintiff's work, or because no reasonable jury, properly instructed, could find that the two works are substantially similar." Id. (internal citations omitted).

## II.

In order to prevail in a copyright infringement action, a plaintiff must show "ownership of a valid copyright", and "copying of constituent elements of the work that are original." Beal v. Paramount Pictures Corp., 20 F.3d 454, 459 (11th Cir. 1994)(citing Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991)). Defendants challenge plaintiff's ability to show both components of the infringement claim as to either registrations. Defendants assert that they are entitled to summary judgment because: (1) plaintiff does not hold a valid copyright either as an "architectural work" or a "technical drawing;" (2) the 2041 does not contain original elements; (3) defendants' Boca Grand and Boca Grand II designs (hereinafter Boca Grand designs)[3] are not substantially similar to the 2041; and (4) the Boca Grand designs

---

[3]The Boca Grand II design is directly derived from the Boca Grand design and thus the Court will refer to the two designs collectively as the Boca Grand designs. (Doc. #136-8, p. 28.)

are not "supersubstantially similar" to the 2041.  (Doc. #136, pp. 12, 14,18, 22.)

**A.   Ownership of Valid Copyright:**

Since the December 1, 1990 enactment of the Architectural Works Copyright Protection Act (AWCPA), architectural plans can obtain copyright protection under two provisions of the Copyright Act.  Architectural plans had been protected as "pictorial, graphic, and sculptural works" under 17 U.S.C. § 102(a)(5), and continue to fall within that provision.  Additionally, architectural plans fall within a new category of copyrightable works called "architectural works."  17 U.S.C. § 102(a)(8).  Thus, the holder of a copyright in an architectural plan has two forms of protection in the form of two separate copyrights, one under § 102(a)(5) and the other under the newer § 102(a)(8).  T-Peg, Inc. v. Vermont Timber Works, Inc., 459 F.3d 97, 109-110 (1st Cir. 2006).

Defendants argue that neither copyright is valid.  They assert that the copyright as an "architectural work" is invalid because the 2041 falls outside the statutory definition, and that the copyright as a "design plan" is invalid because of fraud on the Copyright Office.

**(1)  Architectural Work Copyright:**

It is undisputed that plaintiff holds Certificate of Registration number VA-1-228-418 (hereinafter 418 Certificate) for

the 2041 as an "architectural work."  The issue is whether the copyright is valid.

An "architectural work" is "the design of a building as embodied in any tangible medium of expression, including a building, architectural plans, or drawings."  17 U.S.C. § 101. Architectural works are subject to copyright protection under 17 U.S.C. § 102(a)(8), but this protection does not extend to

> designs of buildings where the plans or drawings of the building were published before December 1, 1990, or the buildings were constructed or otherwise published before December 1, 1990.

37 C.F.R. § 202.11(d)(3)(I).  The reason, of course, is that "architectural works" were not subject to copyright protection until the AWCPA was enacted on December 1, 1990.

Defendants assert that the 2041 does not fall within the copyright protection because plans for the 2041 were published before December 1, 1990 and because a house was constructed using the 2041 plans prior to December 1, 1990.  The record establishes that plaintiff sold the 2041 technical drawings and architectural plans to Robert Reiche, who completed construction of a home based on the 2041 and sold the house to a member of the public on March 25, 1990.  This establishes both prongs of the exclusion, i.e., "that designs of buildings where the plans or drawings of the building were published before December 1, 1990" and that "the buildings were constructed or otherwise published before December 1, 1990."  Publication is defined as:

> [W]hen underlying plans or drawings of the building or
> other copies of the building design are distributed or
> made available to the general public by sale or other
> transfer of ownership, or by rental, lease, or lending.
> Construction of a building does not itself constitute
> publication for purposes of registration, unless multiple
> copies are constructed.

37 C.F.R. § 202.11 (c)(5); <u>see also</u> 17 U.S.C. § 101.  The sale of

the plans to Mr. Reiche constitute the publication of the plans

("distributed or made available to the general public by sale or

other transfer of ownership,").  Construction of the house before

December 1, 1990 by someone other than the copyright holder also

satisfied the statute.

Plaintiff's argument that "the construction of a single home

does not constitute publication . . . nor does the third party

builder's advertisement of the house" (Doc. #153, p. 12) is not

persuasive.  Plaintiff's cases discussing "publication" were not

decided in connection with an "architectural work" and predate the

AWCPA.  The Court is also unconvinced by plaintiff's argument that

the use of the word "building<u>s</u>" in the regulation demonstrates the

statute's intent of excluding construction of a single building

from the exclusionary provision of the regulation.  (Doc. #153, p.

15.)  That argument runs afoul of 1 U.S.C. § 1 which states that

"[i]n determining the meaning of any Act of Congress, unless the

context indicates otherwise . . . words importing the plural

include the singular."  Furthermore, 37 C.F.R. § 202.11(c)(5)

addresses designs of buildings built after December 1, 1990.

Subsection (d) relates to all designs of buildings constructed prior to the enactment of the Architectural Works Copyright Protection Act (AWCPA).

The Court concludes that plaintiff's copyright on the 2041 as an architectural work is invalid, and defendant's Motion for Summary Judgment as to Certificate of Registration No. VA 1-228-418 is granted.

**(2)   Technical Drawing Copyright:**

Defendants assert that Certificate of Registration number VA-1-171-195 (hereinafter 195 Certificate)for the 2041 as technical drawings under 17 U.S.C. § 102(a)(5) is invalid because of fraud on the Copyright Office.[4]   Specifically, defendants argue that plaintiff withheld material information and submitted false information to the Copyright Office.  (Doc. #136, p. 13.)

In order to establish fraud on the Copyright Office, defendants must show that the omission or misrepresentation by plaintiff was "intentional or purposeful concealment of relevant information. Where this element of scienter is lacking courts, generally have upheld the copyright."  <u>Original Appalachian Artworks, Inc. v. Toy Loft, Inc.</u>, 684 F.2d 821, 828 (11th Cir. 1982)(internal quotations omitted).

---

[4]The Court notes that defendants's Motion for Summary Judgment (Doc. #136) does not distinguish between plaintiff's two certificates of registration.  Therefore the Court assumes that defendants' arguments are the same for both certificates.

The Court finds that there is a question of fact as to whether plaintiff acted with the requisite scienter. Plaintiff's registration application explains the change of the publication date, stating that:

> Originally [the Registration Certificate] was given a publication date of January 13, 1989 per the advice of our previous Counsel which stated that the Publication Date and the Creation Date were the same date. Later, Home Design Services Inc. was advised by our Current Counsel that this statement was incorrect.

(Doc. #141-4, p. 2.) Depending on the underlying factual details, a reasonable jury could find such an explanation evidence of a mistake instead of an intent to deceive the Copyright Office. Therefore the Court finds that plaintiff has established there are disputed material facts as to whether fraud was committed, and therefore summary judgment is denied as to this ground.

## B.  Copying of Valid Copyright

Even if there was no fraud as to the technical drawings copyright, defendants assert that plaintiff's technical drawing lacks any original elements and therefore does not warrant copyright protections. Specifically, defendants assert that plaintiff's corporate representative only identified sixteen "original" elements to the 2041, of which nine are "standard features or elements for which copyright protection is precluded." (Doc. #136, p. 17.) Furthermore, defendants assert that their expert witness explained that the remaining seven "original" elements are in reality "merged ideas, design elements taken from

the public domain and/or scenes a faire common to the Mid-Florida area, Mediterranean architectural style and general construction of residential homes." (<u>Id.</u>)

Once plaintiff has established ownership of a valid copyright, it must show that defendants copied the original elements of the 2041 in creating the Boca Grand designs. <u>See</u> <u>Feist Publ'ns, Inc.</u> <u>v. Rural Tel. Serv. Co.</u>, 499 U.S. 340, 361 (1991); <u>Beal</u>, 20 F.3d at 459. Only the copying of original things which "owe their origin" to the Plaintiff are actionable. The originality requirement rules out protecting things "of which the plaintiff by no stretch of the imagination could be called the author." <u>Feist Publ'ns, Inc.</u>, 499 U.S. at 361 (citations omitted). Hence, copyright protection does not encompass general concepts or "standard features." 17 U.S.C. § 101; <u>John Alden Homes, Inc. v. Kangas</u>, 142 F. Supp. 2d 1338, 1343 (M.D. Fla. 2001). "The essence of the first step is to filter out the unoriginal, unprotectible elements--elements that were not independently created by the inventor, and that possess no minimal degree of creativity--through a variety of analyses." <u>Kohus v.</u> <u>Mariol</u>, 328 F.3d 848, 855 (6th Cir. 2003)(internal citations omitted).

As long as an object embodies originality, copyright protection will not be displaced by the fact that the design was embodied in a "useful article." <u>Mazer v. Stein</u>, 347 U.S. 201 (1954). A "useful Article" has an intrinsic utilitarian function

that is not merely to portray the appearance of the article.  See

Donald Frederick Evans & Assocs., Inc. v. Continental Homes, Inc.,

785 F.2d 897, 901 (11th Cir. 1986).  For example, a window is a

useful article and therefore cannot be copyrighted.  However, a

design on a window in not a "useful" article and can be

copyrighted.

Plaintiff responds that the 2041 was independently created.

Plaintiff's president James Zirkel testified that while he

recognizes that not each individual element such as the doors or

windows are original, that the "floor plan as a whole is original."

(Doc. #154-6, p. 31.)  Plaintiff asserts that the copyright law

does not mandate that a work be novel, and that copyright

protection may be extended to works that are substantially similar

to others so long as the work is the independent work of the

author.  (Doc. #153, p. 19.)

The Supreme Court has explained that the "requisite level of

creativity is extremely low; even a slight amount will suffice.

The vast majority of works make the grade quite easily, as they

possess some creative spark, no matter how crude, humble or obvious

it might be."  Feist Publ'ns, Inc., 499 U.S. at 345; see also

Southco, Inc. V. Kanebridge Corp., 258 F.3d 148, 152 (stating that

although "the originality requirement is not demanding, it

nevertheless is a prerequisite for copyright protection since

copyright protection is available only for original works of

authorship.")  Defendants do not assert that the entire floor plan is not original, but rather that a large number of its features are not subject to copyright.  However, under the standard articulated by the Supreme Court a little originality is all it takes to benefit from the protection of the copyright laws.  Furthermore, defendants have not supplied sufficient proof to establish that plaintiff copied the entire 2041 from an outside source. Therefore, the Court finds that a reasonable jury could find that the 2041 is sufficiently original to warrant copyright protection, and summary judgment is denied on this ground.

## C.   Substantial Similarity:

Finally, defendants contend that the Boca Grand and Boca Grand II designs are not substantially similar or "supersubstantially similar" to the 2041.

Because plaintiffs will rarely be able to provide any direct evidence of copying, there is a two-part test for indirect proof of copying.   The plaintiff is first required to show that the defendants "had access to the copyrighted work and that the works are substantially similar."  Herzog v. Castle Rock Entertainment, 193 F.3d 1241, 1248 (11th Cir. 1999).  "If the plaintiff cannot show access, the plaintiff may still prevail by demonstrating that the works are strikingly similar."  Id. (internal citations omitted.)

James Zirkel testified that he sent a copy of the 2041 plans to Howard Baum, the founder of Coastland Homes, Inc. (Doc. #154-6, p. 2.) Howard Baum did not deny the fact that he received the plans, only that he did not recall ever ordering or receiving any such plans. (Doc. #154-2, p. 6.) Thus, the Court finds that plaintiff has provided sufficient evidence to create a jury issue as to whether defendants had access to the 2041 plans.

The next step of the analysis requires the Court to determine whether a reasonable jury could find that the Boca Grand designs are substantially similar to the 2041. In order to establish substantial similarity, plaintiff must show that "an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work." Original Appalachian Artworks, 684 F.2d at 829. In evaluating substantial similarities, the Court may assess the presence of differences between the two works. Howard v. Sterchi, 974 F.2d 1272, 1276 (11th Cir. 1992). The court must be mindful that there are only a finite number of ways a rectangle can be divided into bedrooms, baths, kitchen, living room, closets and so on. "In architectural plans of this type, modest dissimilarities are more significant than they may be in other types of art works." Id.

Here, there is no question that at first glance the floor plans and the overall layout is generally the same. Both plans

call for four bedrooms and two bathrooms.[5]  Furthermore, when the schematic "bubble diagram" of the Boca Grand design is placed over the 2041's floor plan, the similarity is striking. (Compare Doc. #136, Exh. D, pg. 13, with Doc. #136, Exh. D, pg. 14.)

Despite these similarities between the general layout of the 2041 and the Boca Grand designs, a reasonable jury could not find that the Boca Grand designs are substantially similar to the 2041. Some of the striking differences include the square footage, the presence of an island in the kitchen of the Boca Grand designs, the location of the stove, the number of walk-in closets, the location of sinks in master bathroom, the angle of the bathtub in bathrooms, the size of doorways (single doors versus double doors), the closet in the laundry room, the number of windows in master bedroom (four versus two), the presence of a chimney, and the linear corridor separating the fourth bedroom from family room in the 2041. (Compare Doc. #136, Exh. D, Fig. 12, with Doc. #136, Exh. D, Fig. 3.)  In addition to striking differences in the floor plans, the facade of the Boca Grand designs are substantially different from the facade of the 2041.  The Boca Grand designs have different shaped roofs forms from the 2041. (Compare Doc. #136, Exh. D, Fig. 15, with Doc. #136, Exh. D, Fig. 16.)  Furthermore, the 2041's

---

[5]The Court notes that instead of a fourth bedroom, the floor plans for both the Boca Grand and the Boca Grand II call for a den or study.  However, the Court considers that room to be a bedroom as it contains both a window and a closet.

exterior contains a chimney.  (Id.)  Therefore, defendants' Motion
for Summary Judgment is granted.

## IV.

Also before the Court is defendants' Renewed Motion for
Sanctions Pursuant to FED. R. CIV. P. 11 (Doc. #134).  Defendants
assert that plaintiff should be sanctioned because it violated its
"duty of candor when registering its works with the Copyright
Office" and continues to pursue the instant action.  (Doc. #134,
pp. 15, 21.)  Specifically, defendants argue that plaintiff is
pursuing this action knowing that it lacks factual basis and that
sanctions are needed to deter future baseless claims.  (Doc. #134,
p. 22.)

The Court disagrees.  The Court has already found that
plaintiff holds at least one valid copyright and therefore is
entitled to pursue a copyright infringement cause of actions.
Furthermore, as indicated earlier, a reasonable jury could find
that no fraud was perpetrated on the Copyright Office.  Therefore,
defendants' motion is denied.

## V.

Also before the Court is defendant Alanda, Ltd.'s (Alanda)
Motion for Summary Final Judgement.  Alanda asserts that
plaintiff's only theory of recovery against Alanda is for vicarious
liability of copyright infringement.  Alanda argues that plaintiff
cannot establish that Alanda had the right to supervise or control

the infringing acts.    (Doc. #201, p. 10.)   Furthermore, Alanda asserts that it is also entitled to summary judgment on the same grounds as those asserted in its co-defendants motion for summary judgment.  (Doc. #201, p. 18.)

In light of the Court's finding above that the Boca Grand designs are not substantially similar to the 2041 design, the Court will grant Alanda's Motion for Summary Final Judgment.  The Court need not address the issue of vicarious liability.

Accordingly, it is now

**ORDERED**:

1.    Defendants' Renewed Motion for Dismissal and Sanctions Pursuant to FED. R. CIV. P. 11 (Doc. #134) is **DENIED.**

2.    Defendants David Weekley Homes, LLC, Randy Braden, Weekley Homes, L.P., Howard Baum and CH Customer Service, Inc.'s Motion for Summary Judgment (Doc. #136) is **GRANTED.**

3.    Defendant Alanda, Ltd.'s Motion for Summary Final Judgment (Doc. #201) is **GRANTED.**

4.    The Clerk shall withhold the entry of judgment until the conclusion of the case.

**DONE AND ORDERED** at Fort Myers, Florida, this   19th   day of February, 2008.

JOHN E. STEELE
United States District Judge

-16-